UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

MARY NUNEZ,

          Debtor.

Case No. 09-32442-mdm

Chapter 13

_____

MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION
_____

The debtor filed a chapter 13 petition on August 28, 2009. The debtor's plan proposed payments of $548.17 per month for 36 months, followed by $613.17 per month for 10 months, and then $631.50 per month for 14 months, for a total of $34,706.82 in plan payments. The trustee opposed confirmation, finding the following provision objectionable:

> Debtor will pay one half of the income tax refunds received during the plan to the trustee to shorten the overall length of the plan. The plan shall be no shorter than 36 months unless the debtor pays 100% of the unsecured creditors. If the tax refunds shorten the plan to 36 months, any extra sums will go as an additional dividend to claimants. The other half of the tax refunds will be retained by the debtor to help supplement the debtor's expenses and assist with changes in the cost of living during the course of the plan.

(Chapter 13 Plan ¶ 13, filed August 28, 2009). The trustee argued the plan does not provide all projected disposable income for the applicable commitment period because it impermissibly limits contribution of one half of the debtor's tax refunds to shorten the length of the plan rather than to pay unsecured creditors.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## DISCUSSION

Confirmation of a plan is governed by 11 U.S.C. § 1325. Under that section, the court cannot confirm a chapter 13 plan, over an objection by the trustee or the holder of an allowed unsecured claim, unless (1) the plan proposes to pay the unsecured claims in full, or (2) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1).

"Projected disposable income" is not a defined term in the Bankruptcy Code. However, "disposable income" is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended" for the support of the debtor and the debtor's dependents and for the operation of a business. 11 U.S.C. § 1325(b)(2). "Current monthly income" is defined under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) as "the average monthly income from all sources that the debtor receives" during the six-month period preceding the commencement of the case or a date upon which the current income is determined by the court. 11 U.S.C. § 101(10A).

Because the debtor's annualized current monthly income of $50,418.00 shown on Form B22C is less than the median family income for a Wisconsin household of two individuals, the maximum term of the plan is three years, unless the court, for cause, approves a longer period with the term of the plan not to exceed five years. 11 U.S.C. § 1322(d)(2). The debtor's I and J schedules show monthly disposable income of $549.33 per month, and if this amount is paid for 60 months, payments into the plan would equal $32,959.80. Obviously anticipating cutting a few expenses and an increase in income, the debtor proposes to pay a total of $34,706.82 in various

2

Case 09-32442-mdm    Doc 20    Filed 03/01/10    Page 2 of 6

steps over 60 months. This will be necessary as the plan proposes to pay secured claims of $32,964.11 over the term of the plan. Trustee's fees, estimated at this time at 5%, or $1,648.21, added to the secured claims, means that this 60-month plan will have distributions of $34,612.32 for secured claims and trustee's fees, leaving only about a 1% dividend for unsecured creditors. Thus, there is cause to extend the term of the plan to 60 months.

How chapter 13 debtors' tax refunds should be treated in the context of determining projected disposable income has generated a significant amount of legal analysis in this district. *See, e.g., In re Navejer*, Case No. 07-C-654, 2007 WL 3129731, 2007 U.S. Dist. LEXIS 82089 (E.D. Wis. October 22, 2007) (district court agreeing with bankruptcy courts that one half of tax refund is disposable income); *In re Simpson*, Case No. 08-21251, 2008 WL 2705606, 2008 Bankr. LEXIS 3966 (Bankr. E.D. Wis. July 3, 2008) (below-median income debtor's plan, which proposed to limit contribution of one half of debtor's tax refunds to the first three years of the plan and use the funds to shorten to the length of the plan, was not proposed in good faith); *In re Spraggins*, Case No. 07-24728, 2008 WL 2073947, 2008 Bankr. LEXIS 1512 (Bankr. E.D. Wis. May 14, 2008) (supplemental opinion); *In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wis. 2008) (below-median income debtor's projected disposable income is determined by Form B22C, not Schedule I, and tax refunds need not be dedicated to plan if debtor deducts actual taxes incurred, not amounts withheld, from income); *In re Rither*, Case No. 05-23558, 2008 WL 1780934, 2008 Bankr. LEXIS 1278 (Bankr. E.D. Wis. Apr. 16, 2008) (pre-BAPCPA debtor was not allowed to modify plan to limit payments of one half of tax refunds to only the first three years of the newly-extended plan.); *In re Kirsch*, Case No. 07-20338 (Bankr. E.D. Wis. Aug. 15, 2008) (plan which was silent as to treatment of tax refunds where below-median income debtor listed refund

3

as income on Schedule I and expenses on Schedule J; plan could not be confirmed because it violated disposable income requirement of 11 U.S.C. 1325(b)); *In re Walls*, Case No. 06-21228 (Bankr. E.D. Wis. April 10, 2007) (below-median income debtor cannot secure entirety of tax refund received over life of plan by writing such provision in plan; rather, debtor should ask trustee, and if necessary the court, to allow her to keep refund for any particular year based on need for support and maintenance); *In re Balcerowski*, 353 B.R. 581 (Bankr. E.D. Wis. 2006) (for the purpose of determining disposable income, above-median income debtor should estimate, and subtract from income, the actual tax he will incur, not the amount he has withheld from wages).

As explained in a previous decision by this Court, *In re Simpson*, Case No. 08-21251, 2008 WL 2705606, 2008 Bankr. LEXIS 3966 (Bankr. E.D. Wis. July 3, 2008), it has long been the custom in this district to require chapter 13 debtors to commit one half of tax refunds to a chapter 13 plan, unless the proposed plan is to pay 100 % of claims. Other courts have determined that *all* tax refunds are disposable income under BAPCPA. *See In re Michaud*, 399 B.R. 365, 375 (Bankr. D.N.H. 2008) (holding tax refunds constitute disposable income which must be used to fund a debtor's chapter 13 plan); *In re Risher*, 344 B.R. 833, 836-37 (Bankr. W.D. Ky. 2006) (finding that even under BAPCPA, disposable income includes tax refunds).

In this district, the *Spraggins* court determined that below-median income debtors were not required to dedicate tax refunds beyond the three year applicable period, even if the plan proposed a longer term. *Spraggins*, 386 B.R. at 228. The court expounded its reasoning in its subsequent supplemental opinion:

Given the nature of a tax refund as the over-estimation of an expense that is incurred as of

the date of the petition, the Court does not find it logical that a below-median debtor must continue to dedicate tax refunds beyond the three year applicable commitment period. In other words, a tax refund in the fourth year of a plan does not tie into the BAPCPA concept that projected disposable income is the debtor's historical income less expenses incurred as of the date of the petition. Furthermore, if the Court orders the turnover of tax refunds, then under the same rationale, it should also require a debtor to contribute any other expenses that were over-estimated or have decreased since the date of the petition. For example, if the below-median debtor's reasonably necessary expense for transportation in May 2008 is based on gasoline costing $4 per gallon, but in 2012, gasoline prices revert to $2 per gallon, the debtor whose plan was confirmed in 2008 would not be required to contribute the excess created by this over-estimation of expenses to the plan. This is because the expenses in the projected disposable income test are to be estimated as of the date of the petition. The same rule should apply for tax refunds. An over-estimation of taxes incurred should be part of the disposable income calculation for three years, but in year four and five, the calculation is so remote from the BAPCPA definition of projected disposable income so as not to qualify. Finally, in this Court's experience, debtors have more trouble with the tax refund requirement as the years tick by. Arguably it may not be feasible to require the debtor to dedicate these refunds. As long as the debtor makes all the periodic plan payments, and contributes one-half the tax refunds for the three-year applicable commitment period, BAPCPA's projected disposable income requirement has been satisfied.

*Spraggins*, 2208 WL 2073947 at *4.

In *Simpson*, while I recognized that the disposable income limits proposed by *Spraggins* might be appropriate under some situations, I was unwilling to make a bright line rule that there was no such requirement after year three. True, expenses may change over time; that is what plan modifications are for. 11 U.S.C. § 1329. The original plan is confirmed using "projected" income and expenses, including taxes, based on what we know at the beginning of the process. The custom in this district of committing only one half of the tax refund to the plan is a compromise that takes into consideration debtors' inability to predict future expenses, including taxes, and debtors' motivation to retain as much money as possible for day-to-day living, thereby running the risk of under-withholding. This might occur if all the tax refund were required to be paid into the plan (as is the rule in some, if not most, districts) or if only actual taxes were

5

Case 09-32442-mdm    Doc 20    Filed 03/01/10    Page 5 of 6

allowed in determining projected disposable income. However, income tax refunds are disposable income as long as the plan is in effect, and section 1325(b)(1)(b) requires that this disposable income be used to pay *unsecured* creditors. By using these refunds to shorten the plan, the debtor's proposal in this case is directing those payments to *secured* creditors, who are virtually the only recipients of distributions under this plan.

The bankruptcy court in *In re Rodger*, __ B.R. __, 2010 WL 445081, 2010 Bankr. LEXIS 281 (Bankr. D. N.H. February 5, 2010), addressing a similar plan provision, recently held:

> Nothing in § 1322 states, or even suggests, that below median debtors are not required to submit their disposable income to fund their chapter 13 plan for the full term of the plan. Thus, § 1325(b)(1) acts solely to set the minimum term of a chapter 13 plan that debtors may be compelled to propose. If a below median debtor elects to propose a longer term than three years, and the Court for cause approves such longer term, the requirements for payment of disposable income in years four and five of the plan remain the same as those in the first three years of the plan. Nothing in the language or policies of the Bankruptcy Code suggest otherwise.

*Id*. at *2.

Thus, when payments of income tax refunds are paid into the plan, they must be paid to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).

## CONCLUSION

For the reasons stated, the trustee's objection to confirmation is sustained. The debtor may have 30 days from today's date to file an amended plan.

March 1, 2010

Margaret Dee McGarity
Chief Judge, U.S. Bankruptcy Court